IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE ) | |
| ) | |
| CATHY J. HUNT, ) | Case No. 06-50835 |
| ) | |
| Debtor. ) | |
| ) | |
| _____) | |

ORDER DENYING MOTION TO EXTEND THE AUTOMATIC STAY

This matter came before the Court on July 27, 2006 on an Motion by the Debtor to Extend the Automatic Stay ("the Motion"), filed by the Debtor on July 11, 2006. The Court granted a motion to expedite the hearing on this matter, and the matter was heard in Greensboro, North Carolina. A. Carl Penney appeared on behalf of the Debtor and Anita Jo Kinlaw Troxler appeared on behalf of Kathryn Bringle, the Chapter 13 Trustee.

Based upon a review of the Motion, the evidence and arguments presented at the hearing, and a review of the entire official file, the Court finds as follows:

FACTS

In the year preceding the filing of this case, the Debtor has had two other cases pending before this Court. The first case (No. 04-51834) was filed under Chapter 13 on June 23, 2004, and was dismissed on October 19, 2005 ("the First Case"). In the First Case, the Debtor's schedules indicated that she owned a home at 660 Sumner Place in Winston-Salem ("the Residence"). The Residence was valued at $90,000 and was subject to a deed of trust in the amount of $70,052. The Debtor's schedules indicated that she held $12,000 in a 401(k) account. Further, the schedules indicated that the Debtor owned a 1994 Ford Aerostar and a 1997 Cadillac

1

DeVille; the former was non-operable and of no value, and the latter had a value of $8,395, subject to a lien of $6,900. The schedules indicated property tax debt of $850. The Debtor listed unsecured debts as follows: $492 to Catherine's; $365 to Chadwicks; $1,326 to Computer Finance, LLC; $2,000 to Forsyth Memorial Hospital; $362 to J.C. Penney; $2,083 to Providian Master Card; $4,411 to Providian Visa; $5,000 to Russell's Funeral Home; $469 to Sears; and $3,900 to Winston-Salem City Employee Credit Union (total = $20,410). The Debtor listed income of $2,107 per month and expenses of $1,941 per month.

The second case (No. 06-50186) was filed under Chapter 7 on February 16, 2005, and the Debtor received a discharge on May 25, 2006 ("the Second Case"). The Second Case was closed on June 1, 2006. In the Second Case, the Debtor's schedules indicate several changes. The Residence was valued at $82,400 and was subject to a deed of trust in the amount of $80,737. The Debtor's schedules indicated that she owned a 2000 Toyota Sienna CE that had been driven 140,000 miles, was valued at $3,255, and was subject to a lien in favor of Winston-Salem City Employees Credit Union in the amount of $6,900. The Debtor did not list any 401(k) accounts. The Debtor listed several unsecured debts that were identical to the ones listed in the First Case. However, the Debtor did not list the $3,900 debt to Winston-Salem City Employees Credit Union. The Debtor listed income of $973 per month and expenses of $1,911 per month.

The Debtor filed this Chapter 13 case on June 29, 2006 ("the Third Case"). In the Third Case, the Debtor's schedules reflect further changes in the Debtor's situation. The Residence is again valued at $90,000 and is subject to a deed of trust in favor of Select Portfolio Services in

the amount of $64,372.[1]  The Debtor lists a 2000 Toyota Sienna that has been driven 11,000 miles, is valued at $13,388, and is subject to a lien in favor of Winston-Salem City Employees Credit Union in the amount of $2,000.  The schedules do not list any 401(k) accounts.  The Debtor indicates that she owes $849 in property taxes and $414 in income taxes.  The Debtor listed unsecured debts as follows: $400 to Catherines; $400 to Chadwicks; $482 to Forsyth County Ambulance; $2,927 to Forsyth Memorial Hospital; $250 to J.C. Penney; $88 to Lab Corp of America; $290 to Nationwide Insurance; $4,127 to Salem Kidney Center; $250 to Sears; and $78 to Spectrum Lab Network.  The Debtor listed income of $1,996 per month and expenses of $1,002 per month.

The Debtor testified that her primary motivation in filing each of her bankruptcy cases was to save her home.  The Debtor testified that the First Case was dismissed because she became medically disabled and could not make her plan payments.  The Debtor testified that she was seeking to pay the arrearage on the Residence through the Third Case.  Finally, the Debtor testified that she would be able to make required plan payments.

No party filed an objection to this motion.  The Debtor and the Chapter 13 Trustee were the only parties to appear at the hearing.  The Chapter 13 Trustee took no position on the Debtor's motion.

## DISCUSSION

### I. JURISDICTION AND VENUE

Jurisdiction in this case is proper pursuant to 28 U.S.C. § 157(b)(2)(G).  Venue is

---

[1] On July 25, 2006, Select Portfolio Services filed a proof of claim in the amount of $84,266.12.

appropriate under 28 U.S.C. § 1409(a).

## II. STANDARD OF PROOF

If an individual debtor had another bankruptcy case dismissed within one year of the present case, then Section 362(c)(3)(A) provides that the automatic stay terminates "with respect to the debtor" thirty days after filing.[2] However, Section 362(c)(3)(B) provides for a continuation of the stay beyond the initial 30-day period if four requirements are met: (1) a motion is filed; (2) there is notice and a hearing; (3) the notice and hearing are completed before the expiration of the original 30-day period; and (4) the debtor proves that the filing of the new case "is in good faith as to the creditors to be stayed." In re Collins, 333 B.R. 646, 650 (Bankr. S.D. Tex. 2005).

Pursuant to Section 362(c)(3)(C), a presumption arises that the Third Case was not filed in good faith as to all creditors if-

> (I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;
> (II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to-
> > (aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
> > (bb) provide adequate protection as ordered by the court; or
> > (cc) perform the terms of a plan confirmed by the court;
> (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded-
> > (aa) if a case under chapter 7, with a discharge; or
> > (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed . . .

---

[2] Section 362(c)(4) does not apply to the Third Case. For Section 362(c)(4) to apply, a debtor must have had two cases dismissed within one year of the filing of a third case. 11 U.S.C. § 362(c)(4). When Section 362(c)(4) applies, the stay under Section 362(a) does not arise. In this matter, the Second Case ended in a discharge. Therefore, Section 362(c)(3) applies instead of Section 362(c)(4).

If such a presumption arises, then the moving party must carry its burden by clear and convincing evidence. 11 U.S.C. § 362(c)(3). If the presumption does not arise, then the moving party must carry its burden under Section 363(b)(3)(B) by a preponderance of the evidence. In re Galanis, 334 B.R. 685, 691 (Bankr. D. Utah 2005).

The First Case and the Second Case were pending within the one year period preceding the filing of the Current Case. The First Case was dismissed due to the Debtor's failure to make plan payments. The Second Case was filed under Chapter 7, and the Debtor received a discharge. Section 362(c)(3)(C)(I) applies, which causes the presumption to arise. Accordingly, the Debtor must carry her burden under Section 362(c)(3)(B) by clear and convincing evidence.

### III. DETERMINING GOOD FAITH UNDER SECTION 362(c)(3)(B)

The Bankruptcy Code does not explain what party moving under Section 363(c)(3)(B) must show in order to demonstrate that a case is filed in good faith. For purposes of Section 363(c)(3)(B), this Court stated in an earlier decision, In re Havner, 336 B.R. 98 (Bankr. M.D.N.C. 2006), that it adopts the analysis of In re Montoya, 333 B.R. 449 (Bankr. D. Utah 2005), and In re Galanis, 334 B.R. 685 (Bankr. D. Utah 2005). Following Montoya, the Galanis court examined the totality of the circumstances test developed by the Tenth Circuit Court of Appeals in In re Gier, 986 F.2d 1326 (10th Cir. 1993); this test was developed for the purpose of determining whether a chapter 13 case should be dismissed or converted for lack of good faith under Section 1307(c). Galanis, 334 B.R. at 692. After a thorough analysis of the Gier factors, both the Montoya and the Galanis courts noted that the focus of § 362(c)(3)(B) was somewhat different than that of Section 1307(c) and determined that certain Gier factors may not be valid under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The Galanis

5

court concluded its analysis as follows:

> In contemplating the totality of the circumstances analysis, the Court determines that it should consider a few additional factors, not contemplated by Gier. In sum, the Court believes the following factors are relevant to the analysis of good faith under 362(c)(3)(B): 1) the timing of the petition; 2) how the debt(s) arose; 3) the debtor's motive in filing the petition; 4) how the debtor's actions affected creditors; 5) why the debtor's prior case was dismissed; 6) the likelihood that the debtor will have a steady income throughout the bankruptcy case, and will be able to properly fund a plan; and 7) whether the Trustee or creditors object to the debtor's motion.

Galanis, 334 B.R. at 693 (footnote omitted). A totality of the circumstances test has also been adopted by the Fourth Circuit Court of Appeals for the purpose of deciding whether a Chapter 13 case has been filed in good faith. Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986); see also In re Herndon, 218 B.R. 821 (Bankr. E.D. Va. 1998) (citing Gier factors). Thus, this Court uses a totality of the circumstances test for the purpose of determining whether a case is filed in good faith for purposes of Section 362(c)(3)(B) and will examine the factors developed by Gier and modified by Galanis in order to apply the test.

The first factor for consideration in the Court's analysis is the timing of the Debtor's petition. The Debtor filed her current case 35 days after receiving her Chapter 7 discharge. The Debtor certainly did not delay in filing the Third Case, so no creditors were prejudiced by a long delay, but any time a debtor files three successive cases in a relatively short period of time, the Court must be sensitive to the possibility that the debtor is attempting to manipulate the bankruptcy system. The Court must also be wary because the Debtor in this situation is not eligible to receive a discharge. 11 U.S.C. § 1328(f)(1). The Debtor offered no testimony as to why she filed a Chapter 7 case in between her two Chapter 13 cases. The Debtor offered no evidence that she attempted to address her debts through means other than successive

bankruptcies.  As such, the Court determines that this factor weighs against granting the Motion.

The second factor for consideration is how the debts in the present case arose and whether her schedules are accurate.  In this analysis, the Court examines whether the Debtor spent money on luxury items and whether the Debtor had reoccurring expenses or had to pay for unavoidable costs (e.g., medical bills).  The Debtor listed several unsecured debts in the Third Case that were either discharged in the Second Case or were incurred since the Second Case was filed.  When testifying, the Debtor could not explain her schedules or how these debts were incurred.  Either way, these debts indicate bad faith.  The Debtor's schedules show that she purchased a low mileage Toyota Sienna between the Second Case and Third Case.  Finally, the Debtor testified that she owes additional property taxes and income taxes.  Given the Debtor's inability to explain how her additional unsecured debts arose, the Debtor's purchase of a low mileage vehicle since the Second Case was filed, the Debtor's increased tax debt, and the inaccuracies in her schedules, this factor weighs against granting the Motion.

The third factor for consideration is the Debtors' motive in filing the Current Case.  This factor is a wholly subjective inquiry.  The Debtor testified that she filed the Third Case so that she bring the debt on her home current.  This factor weighs in favor of granting the Motion.

The fourth factor for consideration is how the Debtors' actions affected creditors.  While filing for bankruptcy will almost always prejudice creditors to some extent, the Debtor's actions present circumstances that expose her secured creditors to further risks.  The filing of the Third Case negatively affects Select Portfolio Services, secured by the Debtor's residence, and Winston-Salem City Employees Credit Union, secured by the vehicle that the Debtor purchased between the filing of the Second Case and the Third Case; because of the automatic stay, these

creditors cannot pursue any of their state law remedies. The schedules in the Debtor's three cases do not present a consistent picture as to whether there is any equity in the Residence to adequately protect Select Portfolio Services. In the First Case, the schedules showed approximately $20,000 of equity, but in the Second Case, the schedules showed approximately $2,000 of equity. In the Third Case, the schedules show approximately $26,000 of equity; however, while the Debtor listed the secured debt at $64,372, Select Portfolio Services filed a proof of claim in the amount of $84,266, which would indicate only $6,000 of equity. The Debtor offered no evidence regarding this situation. In addition, the purchase of a vehicle between the Second Case and the Third Case raises the question of whether the Debtor sought to avoid paying for the vehicle according to the purchase contract. Given the facts of this case, this factor weighs against granting the Motion.

The fifth factor for consideration is why the Debtor's previous case was dismissed. The First Case was dismissed because the Debtor failed to make plan payments, which failure was due to the Debtor becoming medically disabled. This factor weighs in favor of granting the Debtor's motion.

The sixth factor for consideration is the likelihood that the Debtor can properly fund and maintain a Chapter 13 plan in the Third Case. The Debtor testified that she would be able to make plan payments in this case. Although the schedules in the Third Case show that the Debtor has $994 in excess income, the Debtor did not explain how her income had increased from $973 per month on February 16, 2006 to $1,996 per month on June 29, 2006. The Court finds that the Debtor is not likely to be able to fund the Chapter 13 plan in this case. This factor weighs against of granting the Motion.

The seventh factor for consideration is whether any party in interest has objected to the Debtor's motion.  As indicated above, the Trustee took no position on the Motion.  Further, no creditor filed an objection to the Motion.  This factor weighs in favor of granting the Motion.

In an analysis of good faith, "[n]o one factor is determinative.  Instead, under this test, a court should consider how the factors operate together in order to determine the existence of good faith."  In re Charles, 334 B.R. 207, 223 (Bankr. S.D. Tex. 2005).  The court does not merely court the factors weighing in favor of and against a subject good faith finding.  Rather, the court considers the factors based on the "totality of the circumstances."  Charles, 334 B.R. at 226.  The Debtor has the burden to prove, by clear and convincing evidence, that she filed her case in good faith.  In light of the above discussion, the Court finds that the Debtor has not presented clear and convincing evidence to rebut the presumption that the Debtor filed the Third Case in bad faith.  The timing of the Debtor's three cases, the vehicle recently purchased by the Debtor, and the fact that the Debtor incurred significant unsecured debt prior to the Third Case or listed discharged debts in her Third Case are all factors that indicate bad faith.  Therefore, the automatic stay will not be extended in this case.

## CONCLUSION

The Debtor did not file the Third Case in good faith as to all creditors and the automatic stay will not be extended.

This opinion constitutes the Court's findings of fact and conclusions of law.  A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| CATHY J. HUNT, | ) | Case No. 06-50835 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |

PARTIES IN INTEREST

Cathy J. Hunt

A. Carl Penney, Esquire

Kathryn L. Bring, Esquire